IN THE TAX COURT OF THE
STATE OF OREGON

The ASH ORGANIZATION,
an Oregon corporation

*v.*

CITY OF WILSONVILLE,
an Oregon municipality

(TC 4244)

Gregory W. Byrne, Byrne & Associates, Portland, represented Plaintiff (taxpayer).

Michael E. Kohlhoff, city attorney, Wilsonville, represented Defendant (city).

Decision for Defendant rendered August 31, 1998.

**CARL N. BYERS, Judge.**

Plaintiff seeks a determination that Defendant's (city) road-maintenance user fee constitutes a shift in funding due to the initial implementation of Article XI, section 11, of the Oregon Constitution. Plaintiff claims that implementation of the fee without voter approval violates section 11(19). The city contends there was no reduction in property taxes attributable to street maintenance and therefore section 11(19) is not applicable. Trial was held August 7, 1998, in Salem.

In the November 1996 general election, voters enacted Initiative Measure 47 amending the Oregon Constitution. This amendment imposed new limitations on property taxes and, in doing so, made significant changes to Oregon's property tax system. In January 1997, the Oregon Legislature convened and began working on laws to implement the new constitutional provisions. After some study, the legislature concluded that Measure 47 raised legal questions, would have some unintended consequences, and was difficult to implement. Therefore, the legislature adopted a revised version of Measure 47, and referred the new version, Measure 50 to the people for their approval.

Also in January 1997, the city began preparing its 1997-98 fiscal year budget. The city was aware that Measure 47 would affect its property tax revenues, but, due to the measure's complexity, the city was unable to accurately predict its fiscal impact. Uncertain whether Measure 47 or

Measure 50 would be in effect, the city structured its budget to accommodate the uncertainty. It did this by estimating resources as if neither measure existed, but budgeting expenditures as if property tax revenues would be significantly decreased. The city tried to protect itself by budgeting the difference between the two scenarios as "contingency funds." The city adopted its budget on June 24, 1997.

Also during the early part of 1997, the city anticipated the need for more revenue for streets. On July 21, 1997, the city enacted Ordinance No. 484 imposing a road-maintenance user fee on all developed real property within the city. This Ordinance was adopted by the governing body without voter approval. Plaintiff contends that the new fee constitutes a shift in funding from property taxes and, absent its approval by a vote of the people, is prohibited by Article XI, section 11(19), of the Oregon Constitution.

## ISSUE

Did the city violate Article XI, section 11(19), of the Oregon Constitution, by implementing its road-maintenance user fee without voter approval?

## ANALYSIS

■    Article XI, section 11(19)(a), of the Oregon Constitution, provides:

"The Legislative Assembly shall by statute limit the ability of local taxing districts to impose new or additional fees, taxes, assessments or other charges for the purpose of using the proceeds as alternative sources of funding to make up for ad valorem property tax revenue reductions caused by the initial implementation of this section, unless the new or additional fee, tax, assessment or other charge is approved by voters."

■ ■    In accordance with this mandate, the legislature enacted Oregon Laws 1997, chapter 541, sections 456 through 462. The purpose of those sections is to establish standard procedures by which the local taxing districts determine if a proposed funding mechanism constitutes a shift prohibited by section 11(19). Two key sections require local taxing districts to make specific findings. Section 458

requires the local taxing district to make four findings: (1) identify whether the proposed funding mechanism includes a new or increased fee; (2) identify whether the funding mechanism revenues are to be used to fund a qualified government product or service; (3) determine the amount of the funding mechanism revenues that are to be allocated to fund a qualified government product or service; and (4) identify the portion of the total property tax reduction caused by Measure 50 that would have been allocated to the qualified government product or service but for the reduction.

■   After making the above findings, section 459 then requires the governing body of the local taxing district to find: (1) whether the funding mechanism constitutes a fee; (2) whether the revenues of the funding mechanism fund a qualified government product or service; and (3) whether the proposed use of the funding mechanism revenues results in a shift by replacing property tax reduction amounts with other revenues.

Plaintiff contends that the city's findings under section 458 were deficient. Resolution No. 1424 set forth the dollar amounts to be used for road maintenance, finding "none of which is attributable as a portion of a property tax reduction amount under Section 458(1) * * *." Plaintiff contends that the city is in error and "none" is the wrong answer.

Gary Wallis, City Finance Director, testified that normal street maintenance is funded by the city gasoline tax. Financing of new street construction and major street improvements is accomplished by a serial levy. A new three-year serial levy was passed in May 1997, providing funding for police, youth programs, and parks and roads. For the 1997-98 fiscal year, some $722,269 was levied in property taxes for roads and parks. However, due to the reductions caused by Measure 50, only $638,970 was collectable, leaving a shortfall of $83,299. Wallis stated that the decision had been made early on that any reduction due to either Measure 47 or Measure 50 would be taken out of parks and not out of streets. Accordingly, the $305,000 budgeted for roads was never reduced. However, the resources available for parks were reduced from $338,428 to $256,219 or $82,209.

■ Plaintiff contends that the road fund also suffered reductions because the total resources were reduced from $7,172,621 in 1996-97 to $3,540,431 in 1997-98. However, as Wallis points out, the reductions were in types of revenue other than property taxes. Under Article XI, section 11(19), of the Oregon Constitution, only property tax revenues are of concern. The evidence indicates that $100,000 was budgeted for roads from property taxes in 1996-97 and $305,000 was budgeted in 1997-98. Clearly, there has not been a reduction in property taxes attributable to roads.

Plaintiff contends that its Exhibit 3 demonstrates that the road fund was reduced. However, the preponderance of the evidence indicates that Plaintiff's Exhibit 3 was not an operating document. ORS 305.427.[1] It was prepared for internal use to see how Measure 50 would affect budgets of particular funds if the reductions were allocated ratably. However, the city had decided that Measure 50 reductions would not be applied ratably. The city exercised its discretion and allocated the reductions as it saw fit. Plaintiff concedes that the city has authority to allocate the reductions. In this instance, the city allocated all of the reductions to parks. As reflected in the budget documents, no reduction in property taxes was allocated or attributed to roads.

■ The court finds that the preponderance of the evidence establishes there was no property tax reduction allocated to roads. Accordingly, the finding in Resolution No. 1424 that property tax reductions for roads was "none" complied with the requirements of Oregon Laws 1997, chapter 541, section 458. The city did not violate Article XI, section 11(19), of the Oregon Constitution, when it implemented its road-maintenance user fee without voter approval. Judgment will be entered consistent with this decision. Defendant to recover its costs and disbursements.

---

[1] Reference to the Oregon Revised Statutes is to 1997.